## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Michael S. Kanne<br>Terence T. Evans<br>Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 50229 | **DATE** | 11/20/2001 |
| **CASE TITLE** | Winters, et al. vs. Illinois State Board of Elections, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Cross-motions for judgment on the pleadings by plaintiffs, plaintiff-intervenors, defendants, and defendant-intervenors

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated on the attached Memorandum Opinion and Order, the motions for judgment on the pleadings by defendants and defendant-intervenor Tully are granted, and the motions for judgment on the pleadings by plaintiffs and plaintiff-intervenors Philip et al. are denied. All other issues and claims raised by these parties in this case are rendered moot. This case is consolidated with Case No. 01 C 6566 for purposes of this Memorandum Opinion and Order.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| X | Notices mailed by judge's staff. | | NOV 20 2001 | |
| | Notified counsel by telephone. | | date docketed | 63 |
| | Docketing to mail notices. | U.S. DISTRICT COURT CLERK | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 2001 NOV 20 PM 1:53 | 11-20-01 | |
| | | FILED-WD | date mailed notice | |
| /LC | courtroom deputy's initials | | | |
| | Date/time received in central Clerk's Office | | mailing deputy initials | |

| | |
|---|---|
| DAVID WINTERS, PATRICIA REID LINDNER, J. BRADLEY BURZYNSKI, YOLANDA CAMPUZANO, ARMANDO CARDENAS, GUADALUPE GARCIA, and WILLIE JORDAN, JR., registered voters and Illinois citizens,<br><br>     Plaintiffs,<br><br>  v.<br><br>ILLINOIS STATE BOARD OF ELECTIONS and RONALD D. MICHAELSON, in his capacity as Executive Director of the Illinois State Board of Elections,<br><br>     Defendants. | No. 01 C 50229 |
| BEN BARNOW, individually as a registered voter,<br><br>     Plaintiff,<br><br>  v.<br><br>JIM RYAN, in his official capacity as the Illinois Attorney General, JESSE WHITE, in his official capacity as the Illinois Secretary of State, the STATE BOARD OF ELECTIONS and its members, JOHN R. KEITH, WILLIAM M. MCGUFFAGE, DAVID E. MURRAY, PHILIP R. O'CONNOR, ALBERT PORTER, ELAINE ROUPAS, WANDA L. REDNOUR, and JESSE SMART, all named in their official capacities, the ILLINOIS LEGISLATIVE REDISTRICTING COMMISSION and its members, TOM CROSS, BARBARA FLYNN CURRIE, VINCE DEMUZIO, WALTER DUDYCZ, RAYMOND EWELL, THOMAS MARCUCCI, THOMAS MCCRACKEN, and JORGE RAMIREZ, all named in their official capacities,<br><br>     Defendants. | No. 01 C 6566 |

**MEMORANDUM OPINION AND ORDER**

On September 28, 2001, this court heard consolidated oral argument in the above two cases. That same day, due to impending deadlines imposed by the Illinois Constitution and the necessity of an immediate decision, the court announced its decision from the bench and entered orders disposing of both cases with a written opinion to follow in due course. This is that opinion.[1]

### I. INTRODUCTION

On August 20, 2001, plaintiffs in Case No. 01 C 50229 (collectively referred to as "the Winters plaintiffs") filed a first-amended complaint against defendants, the Illinois State Board of Elections and Ronald D. Michaelson, in his capacity as the Executive Director of the Illinois State Board of Elections. The court has since granted leave to the following parties to intervene in the Winters action: John Tully, intervening as a defendant, James "Pate" Philip and Lee A. Daniels (collectively referred to as "the Philip intervenors"), intervening as plaintiffs, and the League of United Latin American Citizens ("LULAC"), intervening as a plaintiff.

Meanwhile, plaintiff in Case No. 01 C 6566, Ben Barnow, originally filed his two-count complaint against defendants,[2] Jim

---

[1] Just as it did for oral argument, the court has consolidated these nearly identical cases for purposes of this opinion.

[2] Unless otherwise noted, the court will collectively refer to all of the original defendants in both the Winters and Barnow

-2-

Ryan, in his official capacity as the Illinois Attorney General, Jesse White, in his official capacity as the Illinois Secretary of State, the State Board of Elections and its members, all in their official capacities, and the Illinois Legislative Redistricting Commission and its members, all in their official capacities, with the Illinois Supreme Court on August 17, 2001. The Attorney General, acting on behalf of the Barnow defendants, subsequently removed the Barnow case to the Northern District of Illinois under 28 U.S.C. § 1441(a), on the basis of federal question jurisdiction, see id. § 1331.

Because the Winters and Barnow complaints each challenge the constitutionality of Illinois' reapportionment and legislative redistricting process, this three-judge court was convened pursuant to 28 U.S.C. § 2284 and assigned to both cases. Jurisdiction and venue for the cases are proper in this district and division under 28 U.S.C. §§ 1331, 1367, 1391.

## II. **BACKGROUND**

Article IV, § 3(b) of the Illinois Constitution sets forth the manner in which the State of Illinois reapportions its legislative and representative districts. If the Illinois General Assembly is unable to agree on a redistricting plan, the task is charged to a Legislative Redistricting Commission ("the Commission"). The Commission is initially composed of eight

---

cases as, simply, "defendants."

members, no more than four of whom may be members of the same political party. Should the eight-member Commission deadlock and fail to approve a redistricting plan by majority vote before August 10, a ninth, tie-breaking member is appointed. To choose the ninth member, article IV, § 3(b) directs the Illinois Supreme Court to submit the names of two persons, not of the same political party, to the Secretary of State. The Secretary of State is then called upon to publicly "draw by random selection" the name of one of the two persons, who then becomes the ninth Commission member.

It is this so-called "tie-breaking provision," requiring the ninth Commission member to be picked at random, that precipitated the Winters plaintiffs and Barnow to file suit. They, along with the Philip intervenors, urge the court to declare that the tie-breaking provision of article IV, § 3(b) of the Illinois Constitution violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution. Opposing them are defendants and Tully, who seek to uphold the constitutionality of the tie-breaking provision. At the court's request, all of the parties (except LULAC, which affirmatively disclaimed any interest in doing so) submitted cross-motions for judgment on the pleadings regarding this and other specified issues, pursuant to Federal Rule of Civil Procedure 12(c). As it turns out, only the question of whether the tie-breaking provision violates the Fourteenth Amendment

requires the court's attention in this opinion.

### III. **ANALYSIS**

#### A. **Judgment on the Pleadings**

A motion for judgment on the pleadings under Rule 12(c) is treated the same as one to dismiss for failure to state a claim under Rule 12(b)(6): the court accepts as true all well-pleaded allegations in the complaint and draws all reasonable inferences therefrom in favor of the plaintiffs. See Forseth v. Village of Sussex, 199 F.3d 363, 368 & n.6 (7th Cir. 2000). A Rule 12(c) motion will be granted only if it appears beyond doubt that the plaintiffs cannot prove any facts that would support a claim for relief. See id. at 368.

The Winters plaintiffs and Philip intervenors (who filed a joint motion) suggest theirs is "essentially a motion for summary judgment," but this apparently assumes the court will consider the voluminous exhibits they have attached to their motion and response brief. However, the vast majority of materials they have tried to introduce are simply irrelevant to the court's decision. Indeed, the court wishes to make clear the only documents outside the pleadings it has considered are the verbatim transcripts from the Sixth Illinois Constitutional Convention - an item the court may properly take judicial notice of as a matter of public record without converting the motions for judgment on the pleadings into ones for summary judgment. See Anderson v. Simon, 217 F.3d 472, 474-75 (7th Cir. 2000),

-5-

cert. denied, 531 U.S. 1073 (2001); United States v. Wood, 925 F.2d 1580, 1582 (7th Cir. 1991). All other documents, exhibits, and materials attached to the parties' briefs and motions are stricken.

B. **Substantive Due Process**

Although the Winters and Barnow complaints challenge the tie-breaking provision on various grounds, the court believes the proper analysis is based on substantive due process. The first problem this poses is which standard of review the court should apply – strict scrutiny, rational basis, or something in between? All the parties seem to agree some form of rational basis review is appropriate, but it is less clear why that is so.

Defendants believe the Supreme Court's election law and voting rights cases provide the proper framework for evaluating the tie-breaking provision. In recent years, the Supreme Court has backed off somewhat from its strict categorical approach to the right to vote. Compare Reynolds v. Sims, 377 U.S. 533, 554-55, 562 (1964) (right to vote is fundamental and any alleged infringement on right to vote must be "carefully and meticulously scrutinized"), and Illinois State Bd. of Elections v. Socialist Workers Party, 440 U.S. 173, 184 (1979) (right to vote is a fundamental right subject to strict scrutiny), with Rodriguez v. Popular Democratic Party, 457 U.S. 1, 9 (1982) (right to vote *per se* is not a constitutionally protected right), and Burdick v. Takushi, 504 U.S. 428, 432-33 (1992) (right to vote in any manner

through the ballot is not absolute and law imposing burden on right to vote is not necessarily subject to strict scrutiny). It now uses a "more flexible standard" when a state election law impacts the right to vote, adjusting the rigorousness of the inquiry depending on the extent to which the challenged regulation burdens Fourteenth Amendment rights. See Burdick, 504 U.S. at 434. Under Burdick, defendants suggest strict scrutiny is inappropriate because Illinois' tie-breaking provision does not subject the rights of Illinois voters to "severe" voting restrictions. See id. In fact, according to defendants, the tie-breaking provision does not affect a voter's access to the ballot, access to the polls, or burden a person's voting rights in any other way. If anything, they say, the random selection of a ninth Commission member imposes nothing more than a "reasonable, nondiscriminatory restriction" on the right to vote, thus calling for rational basis review. See id.

The court, however, need not ultimately decide how the tie-breaking provision would fare under Burdick, as it will instead apply the Supreme Court's more generic substantive due process analysis. This too, it should be noted, points to a rational basis test.

If a piece of legislation does not burden a fundamental right, substantive due process requires only that it be rationally related - in other words, that it not be completely arbitrary and lacking any connection - to a legitimate government

interest. See Washington v. Glucksberg, 521 U.S. 702, 728 (1997); Turner v. Glickman, 207 F.3d 419, 426 (7th Cir. 2000). Whether a "fundamental right" is involved in the first place demands a "careful description" or formulation of the asserted fundamental liberty interest. Glucksberg, 521 U.S. at 721, 722. This means the liberty interest at issue must be defined in concrete, specific terms, not abstract generalizations. See id. at 722; Khan v. Gallitano, 180 F.3d 829, 833-34 (7th Cir. 1999).

One possibility here is to define the liberty interest at stake more broadly so as to implicate the right to vote. By determining who becomes the ninth Commission member, who in turn will likely cast the deciding vote on which reapportionment map the Commission will approve, the tie-breaking provision undeniably has some indirect effect, down the road at least, on a person's right to vote. But interpreting the tie-breaking provision as falling under the umbrella of the right to vote in this way is premised on a much more abstract notion of that right than the Supreme Court's substantive due process jurisprudence allows. Rather, the specific question before the court in the present cases is more narrowly framed as: "Is there a fundamental right to have the tie-breaking member of a redistricting commission chosen by some means other than by lot?" Cf. Glucksberg, 521 U.S. at 722-23 (issue was not whether there is fundamental right to die, but whether there is "right to commit suicide which itself includes a right to assistance in

-8-

doing so"); Khan, 180 F.3d at 833-34 (fundamental right was not the general or broad right to contract, but the "right to be free from state officials tortiously interfering with one's existing contractual relationships"). The answer to that is obviously, "Of course not," and nobody suggests otherwise. As no other fundamental right is arguably implicated, the court will apply the "highly deferential" rational basis review. Turner, 207 F.3d at 426.

No one seriously doubts the State of Illinois has a legitimate interest in legislative redistricting. The Supreme Court has repeatedly emphasized the primary responsibility for legislative and congressional reapportionment lies with the States. See Growe v. Emison, 507 U.S. 25, 33-34 (1993); Miller v. Johnson, 515 U.S. 900, 915 (1995). And, in this court's opinion, the tie-breaking provision is rationally related to that interest.

Given the politically sensitive nature of the ninth Commission member's position in Illinois' redistricting scheme, it would seem, at first blush anyway, picking that member's name out of a hat is anything but rational. But the delegates at the 1970 Illinois Constitutional Convention – whence the tie-breaking provision came – had their reasons. Specifically, they believed it would give both political parties an incentive to compromise because neither side would want to risk losing the random drawing. As one delegate explained:

> The object of the reapportionment plan . . . is to
> reduce both political parties to a state of
> equivalency. We believe we achieve this by utilizing
> the random selection method of achieving a tie-breaker,
> whereby neither party could look ahead with certainty
> as to a potentional [sic] tie-breaker being more in
> line with their opinions than with the other party's
> opinions.
>
> * * *
>
> [W]e believe we have adopted the most sensible [tie-
> breaker reapportionment scheme] in that it does not at
> any stage give the impetus to one party or the other to
> stalemate, because it can look to the tie-breaker
> system and figure out that it might have a better
> advantage further down the road.

IV RECORDS OF PROCEEDINGS, SIXTH ILLINOIS CONSTITUTIONAL CONVENTION, at 2955, 2956 (July 21, 1970) (statements of Del. Sommerschield). This justification for the random selection of the tie-breaking Commission member - to act as a catalyst for bipartisan cooperation during reapportionment - is perfectly reasonable, or at least not so totally unreasonable that it fails the rational basis test.

In some respects, it may even be more rational than the procedures found in other states. For example, in four states where a redistricting commission is used, the tie-breaking member is chosen by either a majority of the state's Supreme Court or the Chief Justice of the state Supreme Court. See Alaska Const. art. VI, § 8; Mont. Const. art. V, § 14(2); N.J. Const. art. IV, § 3, ¶ 2; Pa. Const. art. II, § 17(b). As a result, the commission members in these states who may be affiliated with the same political party as the state Supreme Court's majority or its Chief Justice may have no incentive to compromise because they

can safely assume the tie-breaker will end up in their favor.

The delegates of the 1970 Illinois Constitutional Convention reasonably thought they could avoid this problem with the use of a random drawing. Unfortunately, as it turned out, they were wrong, and the Winters plaintiffs and Philip intervenors spend a great deal of time trying to prove just how wrong they were by recounting the rather ignominious past of the tie-breaking provision and the sharp criticism it has received over the years. History proves it has had just the opposite of its desired effect. Rather than forcing the parties to find common ground for fear of losing the random drawing, they are apparently willing to dig in their heels with the hope of *winning* the drawing. In fact, the Commission has resorted to the tie-breaking provision in each of the last three rounds of reapportionment in Illinois. (Winters Am. Compl. ¶¶ 32-34; Barnow Compl. ¶¶ 49-59) Accepting them as true, these arguments illustrate well that the tie-breaking provision has not done what it was supposed to do: prevent deadlock in the Commission. The Winters plaintiffs and Philip intervenors also point out that Illinois, in choosing the tie-breaking member by lot, is unique among states with redistricting commissions. (Winters Pls. & Philip Intervenors Mem. in Supp. of Mot. for J. on the Pleadings, Exh. E) So what does all this mean? In terms of substantive due process analysis, not much.

"It is one of the happy incidents of the federal system that

a single courageous state may, if its citizens choose, serve as a laboratory," Reeves, Inc. v. Stake, 447 U.S. 429, 441 (1980) (quoting New State Ice Co. v. Liebmann, 285 U.S. 262, 311 (1932) (Brandeis, J., dissenting)), to conduct novel experiments in the "science of government" and test solutions to difficult problems of policy; such a state is given broad latitude, its decisions subject only to the minimum requirements of the Fourteenth Amendment that they not be arbitrary, capricious, or unreasonable. See Smith v. Robbins, 528 U.S. 259, 273-75 (2000); Garcia v. San Antonio Metro. Transit Auth., 469 U.S. 528, 546 (1985) (quoting Anderson v. Dunn, 5 L. Ed. 242, 247 (1821)); Chandler v. Florida, 449 U.S. 560, 579 (1981) (quoting Liebmann, 285 U.S. at 311 (Brandeis, J., dissenting)); Whalen v. Roe, 429 U.S. 589, 597 (1977). Perhaps the Winters plaintiffs and Philip intervenors are right that Illinois' experiment to choose the tie-breaking Commission member by chance has been a real-world failure. But that need not concern this court. Reapportionment is, without question, a thorny issue of public policy, one where a state deserves plenty of leeway to experiment and, sometimes, make mistakes. See Growe, 507 U.S. at 34; cf. Rodriguez, 457 U.S. at 8 (methods used by Puerto Rico to structure its electoral system given "substantial deference"). What matters for present purposes is whether the idea behind the tie-breaking-by-lot experiment makes a reasonable amount of sense. As explained above, it does, and not even the Winters plaintiffs and Philip

intervenors seriously dispute this. Because the tie-breaking provision is rationally related to Illinois' significant interest in the reapportionment process, the court finds it does not violate the substantive component of the Due Process Clause.

This is so despite Justice Bilandic's dissenting opinion in People ex rel. Burris v. Ryan, 588 N.E.2d 1033 (Ill.), cert. denied, 504 U.S. 973 (1992). Justice Bilandic argued the tie-breaking provision does not comply with due process because it arbitrarily establishes legislative districts, which in turn impacts "the rights of Illinois citizens to participate on a fair and equal basis in the electoral process." Burris, 588 N.E.2d at 1042 (Bilandic, J., dissenting). In reaching this conclusion, he relied heavily on Walker v. State Board of Elections, 359 N.E.2d 113 (Ill. 1976), where the Illinois Supreme Court addressed a section of the Illinois Election Code providing for the disqualification of a single member of the State Board of Elections in the case of a deadlock, with the member's name drawn by lot. The court struck down this section on two grounds: (1) it violated due process because it caused decisions to be arrived at in an arbitrary manner and left the ultimate outcome to chance; and (2) it violated article III, § 5 of the Illinois Constitution, which prohibits any political party from having a majority on the Board. See id. at 123.

This court finds Justice Bilandic's dissent in Burris unpersuasive and the majority opinion in Walker distinguishable

for various reasons. First, Justice Bilandic seemed to assume without discussion the tie-breaking provision of article IV, § 3(b) could be subsumed under the broader fundamental right to vote for substantive due process analysis – a notion this court has explicitly rejected earlier in this opinion. More importantly, he did not analyze the crucial question of whether the rationale behind that provision could save it from a due process attack. As for <u>Walker</u>, the tie-breaking provision in that case involved the random *disqualification* of a board member, so as to *prevent* a duly-appointed state constitutional officer from casting his or her vote. In contrast, the tie-breaking provision at issue here calls for the random *addition* of another Commission member, so it does not affect the ability of the other eight Commission members to cast their votes. The holding in <u>Walker</u> also depended in part on a separate section in the Illinois Constitution that specifically prohibited a political party from having a majority on the State Board of Elections. No similar provision exists with respect to the composition of the Legislative Redistricting Commission. Finally, and, once again, most critically, the majority in <u>Walker</u> never considered any redeeming, legitimate legislative purpose for the Election Code's tie-breaking provision. Perhaps its silence on the issue is meant to imply it could find no such purpose. In any event, the justification for the tie-breaking provision of article IV, § 3(b), as articulated in the debates of the 1970 Illinois

Constitutional Convention, is more than sufficient to pass rational basis review.

C.  **Procedural Due Process**

In their joint response brief, the Winters plaintiffs and Philip intervenors try to frame the constitutionality of the tie-breaking provision in terms of procedural due process. When a state deprives an individual of a protected liberty or property interest, procedural due process generally guarantees the right to fair procedures, such as adequate notice, an opportunity to be heard, and an impartial decision maker. See Head v. Chicago Sch. Reform Bd. of Tr., 225 F.3d 794, 803-04 (7th Cir. 2000). The court fails to see how the tie-breaking provision implicates these concerns. In the first place, the Winters plaintiffs and Philip intervenors have never suggested what liberty or property interest the tie-breaking provision supposedly deprived them of. And while the manner of selecting the ninth Commission member may indeed be arbitrary, based as it is on chance (although the court stresses again the idea behind it is *not* arbitrary), this is a separate and distinct issue from whether the procedures used and decisions reached by the Commission are themselves arbitrary or unfair. Procedural due process is concerned with the latter, not the former.

Apparently recognizing this, the Winters plaintiffs and Philip intervenors claim the Commission, with the Democrats gaining control after this year's tie-breaker, has rode roughshod

over the Republican minority and ignored all sorts of procedural requirements and internal rules, leading to a final reapportionment map that is the product of a hurried and one-sided decision-making process. However, this is not what the Winters and Barnow complaints allege and is not what these cases are about. The Winters plaintiffs and Philip intervenors proved this very point when they moved to amend the Winters complaint to add these new allegations on the day of oral argument (a motion the court has already denied). In fact, similar allegations form part of an entirely new law suit filed in this court on October 12, 2001, in which the plaintiffs are represented by the same attorneys representing the Winters plaintiffs and Philip intervenors. See Campuzano v. Illinois State Board of Elections, No. 01 C 50376. Therefore, the court considers the procedural due process argument a non-issue and need address it no further.

D. **Equal Protection**

In rather summary fashion, the Winters plaintiffs and Philip intervenors challenge the tie-breaking provision on equal protection grounds. This argument also merits little discussion. Put simply, the Equal Protection Clause does not apply in the first instance because the tie-breaking provision does not create any sort of classification whatsoever. Instead, it treats both political parties exactly the same and singles neither party out for disparate treatment. The two candidates chosen by the Supreme Court to be used in the drawing may not be of the same

political party and each candidate's name is thrown into the hat only once, so each party stands an equal chance of winning (or losing) the drawing. As a result, the tie-breaking provision does not fall disproportionately on any discrete political party or otherwise afford unequal treatment to different political parties. See Rodriguez, 457 U.S. at 10, 12; cf. Weisberg v. Powell, 417 F.2d 388, 394 (7th Cir. 1969) (requiring selection by lot to determine the order of placing names on a ballot to *avoid* equal protection violation); Mann v. Powell, 333 F. Supp. 1261, 1267 (N.D. Ill. 1969) (same).

## IV. **CONCLUSION**

For the reasons stated above, the court finds the tie-breaking provision of article IV, § 3(b) of the Illinois Constitution does not violate the Due Process or Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution. It accordingly grants the motions for judgment on the pleadings by defendants in the Winters and Barnow cases and defendant-intervenor Tully, and denies the motions for judgment on the pleadings by the Winters plaintiffs and Philip intervenors and Barnow. This also means, as noted in the court's oral ruling and previous minute orders, all other issues and claims raised by the parties in these cases are rendered moot.

ENTER:

_____
MICHAEL S. KANNE, CIRCUIT JUDGE

_____
TERENCE T. EVANS, CIRCUIT JUDGE

_____
PHILIP G. REINHARD, DISTRICT JUDGE

DATED: __NOV 20 2001__